IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ARIS HINES and                    )
BRANDI THOMASON,                  )
                                  )
           Plaintiffs,            )
                                  )
     v.                           )          1:19CV515
                                  )
TERRY S. JOHNSON, individually    )
and in his official capacity      )
as Sheriff of Alamance County,    )
RANDY JONES, individually and     )
in his official capacity as       )
Deputy Sheriff of Alamance        )
County, ALAMANCE COUNTY,          )
and DOE DEPUTIES 1-10,            )
                                  )
           Defendants.            )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Plaintiffs Aris Hines and Brandi Thomason bring several

Causes of Action against Defendants Terry S. Johnson, Randy

Jones, Alamance County, and Doe Deputies 1-10, including eight

Causes of Action pursuant to 42 U.S.C. § 1983, and North

Carolina common law Causes of Action for intentional infliction

of emotional distress, malicious prosecution and abuse of

process, slander, and negligent infliction of emotional

distress. (Doc. 1.) Defendants have moved to dismiss Plaintiffs'

Complaint under Rules 12(b)(2) and 12(b)(6) of the Federal Rules

of Civil Procedure. (Doc. 6). For the reasons set forth below,

the court will deny Defendant' motion to dismiss Plaintiffs'

Ninth Cause of Action for intentional infliction of emotional distress but will dismiss the remaining causes of action without prejudice.

I.  **PROCEDURAL AND FACTUAL BACKGROUND**

On a motion to dismiss, a court must "accept as true all of the factual allegations contained in the complaint . . . ." Ray v. Roane, 948 F.3d 222, 226 (4th Cir. 2020) ) (citing King v. Rubenstein, 825 F.3d 206, 212 (4th Cir. 2016)). The facts, taken in the light most favorable to Plaintiffs, are as follows.

A.  **Parties**

Plaintiffs Aris Hines and Brandi Thomason appear to have resided in North Carolina during the relevant period, and now reside in Texas. (Complaint ("Compl.") (Doc. 1) ¶¶ 6, 34.) Plaintiff Hines was engaged to Plaintiff Thomason during the relevant time period. (Id. ¶ 19.) Defendant Terry S. Johnson is the Sheriff of Alamance County. (Id. ¶ 7.) Defendant Randy Jones is the Deputy Sheriff of Alamance County. (Id. ¶ 8.) Defendants Doe Deputies 1-10 have been or were members of the Alamance County Sheriff's Office, who are unknown to Plaintiffs. (Id. ¶ 9.) Defendant Alamance County, North Carolina, is a political subdivision of North Carolina. (Id. ¶ 10.)

B.  **Factual Background**

"On May 6, 2016, an arrest warrant was issued for Plaintiffs Hines and Thomason for the alleged offenses of Felony

Common Law Obstruction of Justice and Felony Obtaining Property by False Pretenses." (Id. ¶ 14.) Plaintiffs were arrested and held in Alamance County jail. (Id. ¶ 16.)

Plaintiffs allege Defendants "harassed and threatened Plaintiffs while they were being held and after their illegal arrest and seizure." (Id. ¶ 18.)

On May 16, 2016, Defendant Johnson, Sheriff for Alamance County, made several public statements concerning Plaintiffs' case: "'This has the smell of a human trafficking organization' . . . . 'But the operation, is much bigger than Hines, Thomason, and the Eastern Alamance student who was recruited' . . . . 'We're looking into all aspects of human trafficking. Workforce, athletes, sex trafficking, whatever." (Id. ¶ 22.) The next day, May 17, 2016, Defendant Johnson allegedly made the following public statements about Plaintiffs:

> 23. "There is also evidence that Hines and Thomason may have committed similar crimes in Oklahoma and West Virginia." "I think, probably, they're the only two in Alamance County, but I think there's a bigger organization out there from Charlotte to Oklahoma, West Virginia, overseas, etc."

> 24. "[B]eyond allegedly scamming countless other families, [Aris Hines and Brandi Thomason] could be part of a larger human trafficking organization involving the recruitment of foreign students to the United States to go to nonexistent private schools and play sports" . . . . "We know they've got someone over in these foreign countries, which is typical of human trafficking, that is handling the situation over there, shipping them, Hines receives them,

-3-

then Hines disperses them wherever he can." (alterations in original).)

25. He "believed Hines and Thomason presented a flight risk."

(Compl. (Doc. 1) ¶¶ 23-25.)

During this same public announcement, Defendant Johnson also "alleged that the student-athlete incident could be part of a broader human trafficking scheme." (Id. ¶ 26.) He alleged "the couple unsuccessfully tried to enroll three other female juveniles into the Alamance-Burlington school system," which caused Johnson to state, "This causes me, folks, grave concern for where these young ladies are at." (Id.) He then stated that "authorities are searching for three girls who Sheriff Terry Johnson says were last seen with the [Plaintiff Hines] at the center of a human trafficking investigation." (Id. ¶ 27.)

On May 18, 2016, Johnson stated in a news conference that "he believe[d] the discovery of kids living in deplorable conditions at the [Plaintiffs'] home [was] a part of a bigger organization." (Id. ¶ 29.)

The three girls for whom the police were searching were later found and "Plaintiffs were never charged with human trafficking." (Id. ¶ 28.) The charges against Plaintiffs in Alamance County were dropped around July 6, 2018. (Id. ¶ 32.)

Plaintiffs allege that they incurred damage to their reputations such that they had to move outside of North

Carolina, and as a result of Defendants' actions, "have suffered
serious and permanent financial, physical, psychological and
emotional injury, for which they received and are continuing to
receive medical, psychological and psychiatric attention." (<u>Id.</u>
¶¶ 34, 36.)

### C. **Procedural Background**

Plaintiffs filed the Complaint in this court on May 16,
2019. (Compl. (Doc. 1).) Defendants filed a motion to dismiss,
(Defs.' Mot. to Dismiss Complaint ("Defs.' Mot.") (Doc. 6)), and
a supporting brief, (Brief in Supp. of Mot. to Dismiss ("Defs.'
Br.") (Doc. 7)). Plaintiffs responded, (Pls.' Mem. in Opp'n to
Defs.' Mot. to Dismiss ("Pls.' Resp.") (Doc. 10)), and
Defendants replied, (Doc. 14)).

Defendants move to dismiss Plaintiffs' Complaint pursuant
to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(2).
(Defs.' Mot. (Doc. 6) at 1.)

Plaintiffs bring the following Causes of Action.
Plaintiffs' First Cause of Action alleges all Defendants "are
liable to Plaintiffs for their failure, incompetence and/or
negligence as supervisory and/or managerial officers in
investigating the facts," in violation of 42 U.S.C. § 1983.
(Compl. (Doc. 1) ¶¶ 40-43.) The Second Cause of Action alleges
negligent supervision in violation of 42 U.S.C. § 1983 against

Defendants Johnson and Jones.[1] (Id. ¶¶ 44-50.) The Third Cause of

Action alleges malicious prosecution in violation of 42 U.S.C.

§ 1983 against all Defendants. (Id. ¶¶ 51-55.) The Fourth Cause

of Action alleges invasion of privacy in violation of 42 U.S.C.

§ 1983 against all Defendants. (Id. ¶¶ 56-57.) The Fifth Cause

of Action alleges Defendants are liable to Plaintiffs for

causing "severe humiliation and embarrassment" in violation of

42 U.S.C. § 1983. (Id. ¶¶ 58-59.) The Sixth Cause of Action

alleges defamation in violation of 42 U.S.C. § 1983 against all

Defendants. (Id. ¶¶ 60-66.) The Seventh Cause of Action

duplicates the First Cause of Action. (Id. ¶¶ 67-68.) The Eighth

Cause of Action alleges Defendants Johnson, Jones, and Alamance

County "improperly and/or negligently trained, supervised,

monitored and/or disciplined Doe Deputies 1-10 and their

subordinate officers" in violation of 42 U.S.C. § 1983.[2] (Id.

¶¶ 69-70.) The Ninth Cause of Action alleges intentional

---

[1] While the final paragraph for this cause of action
technically names Doe Deputies 1-10 and Alamance County as being
liable, the cause of action is for negligent supervision,
(Compl. (Doc. 1) ¶ 50), and Plaintiffs specifically allege in
this cause of action that Defendants Johnson and Jones exercised
supervisory authority over Doe Deputies 1-10, (id. ¶¶ 45, 47).
The court will therefore treat this cause of action as against
Defendants Johnson and Jones alone. The court also notes that
the charging paragraphs of each cause of action are essentially
boilerplate accusations.

[2] This cause of action almost duplicates Plaintiffs' Second
Cause of Action. (Compare Compl. (Doc. 1) ¶ 50, with id. ¶ 70.)

infliction of emotional distress against all Defendants. (Id.
¶¶ 71–78.) The Tenth Cause of Action alleges malicious
prosecution against all Defendants. (Id. ¶¶ 79–92.) The Eleventh
Cause of Action alleges defamation against all Defendants. (Id.
¶¶ 93–100.) Finally, the Twelfth Cause of Action alleges
negligent infliction of emotion distress against all Defendants.
(Id. ¶¶ 101–110.)

Plaintiffs sue Defendants Johnson and Jones in their
official and individual capacities. (Id. at 1.) Plaintiffs sue
Defendants Doe Deputies 1–10 in their individual capacities.
(Id. ¶ 9.) Plaintiffs also sued Defendant Alamance County.

## II.  STANDARD OF REVIEW

### A.  Rule 12(b)(2)

Under Federal Rule of Civil Procedure 12(b)(2), a plaintiff
must ultimately prove by a preponderance of the evidence that
this court's personal jurisdiction over a defendant is proper.
Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). A plaintiff
need only "make a prima facie showing of a sufficient
jurisdictional basis in order to survive the jurisdictional
challenge." Id. (citation omitted).

### B.  Rule 12(b)(6)

To survive a Rule 12(b)(6) motion, "a complaint must
contain sufficient factual matter, accepted as true, to 'state a
claim to relief that is plausible on its face.'" Ashcroft v.

_Iqbal_, 556 U.S. 662, 678 (2009) (quoting _Bell Atl. Corp. v. Twombly_, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." _Iqbal_, 556 U.S. at 678 (citing _Twombly_, 550 U.S. at 556–57). When ruling on a motion to dismiss, this court accepts the Complaint's factual allegations as true. _Iqbal_, 556 U.S. at 678. Further, this court liberally construes "the complaint, including all reasonable inferences therefrom, . . . in plaintiff's favor." _Estate of Williams-Moore v. All. One Receivables Mgmt., Inc._, 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004) (citation omitted). This court does not, however, accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." _Iqbal_, 556 U.S. at 678.

## III. **ANALYSIS**

Defendants challenge Plaintiffs' Complaint on several grounds. Defendants first argue that Alamance County should be dismissed from this action because it is not a proper defendant because neither deputies nor sheriffs are employees of the county nor do Plaintiffs make any allegations that the county

was involved in their arrest. (Defs.' Br. (Doc. 7) at 5.)[3] Next, Defendants argue that Defendants Johnson and Jones are entitled to qualified immunity for all § 1983 claims to the extent those claims are brought against them in their individual capacities. (Id. at 5–6.) Defendants contend Plaintiffs' failure to name Defendant Johnson's surety deprives them of personal jurisdiction over him for state law negligence claims. (Id. at 7.) Defendants further contend that sovereign immunity bars all official capacity claims. (Id.) Defendants also argue that they should receive "public officers immunity" from Plaintiffs' state law negligence claim. (Id. at 8.) Regarding Plaintiffs' defamation claims, Defendants argue these claims are time barred. (Id. at 8–9.) Finally, Defendants contend that Plaintiffs' state law claims fail under Rule 12(b)(6). (Id. at 4–9.) The court will address these arguments in turn.

### A. Alamance County is Not a Proper Defendant

Defendants are correct that Alamance County is not a proper party to this case. In North Carolina, the Office of Sheriff is a legal entity, established by the state constitution and state statutes, separate and distinct from the county because a

---

[3] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

sheriff is elected by the people, not employed by the county. See N.C. Const. art. VII, § 2; N.C. Gen. Stat. § 162-1; Landry v. North Carolina, No. 3:10-cv-585-RJC-DCK, 2011 WL 3682788, at *2 (W.D.N.C. Aug. 23, 2011); Little v. Smith, 114 F. Supp. 2d 437, 446 (W.D.N.C. 2000); Young v. Bailey, 368 N.C. 665, 669, 781 S.E.2d 277, 280 (2016). North Carolina common law "unequivocally establishes that sheriff's deputies are employees of the sheriff, and are not county employees." McLaughlin v. Bailey, 240 N.C. App. 159, 164, 771 S.E.2d 570, 575 (2015), aff'd, 368 N.C. 618, 781 S.E.2d 23 (2016) (citing Styers v. Forsyth Cty., 212 N.C. 558, 194 S.E. 305 (1937)); see Young, 368 N.C. at 669-70, 781 S.E.2d at 280.

Here, Plaintiffs are "attempt[ing] to attach responsibility to Defendant [Alamance] County through actions of the Sheriff's Office and its employees." Landry, 2011 WL 3682788, at *2. Because Plaintiffs have not alleged any facts in the Complaint "that could possibly implicate Defendant [Alamance] County, and Plaintiff[s'] objections to this dismissal are without merit," all claims against Alamance County will be dismissed. Id.

**B.  § 1983 Claims Against Individual Defendants**

"To state a claim under § 1983, a plaintiff must aver that a person acting under color of state law deprived him of a constitutional right or a right conferred by a law of the United

States." <u>Wahi v. Charleston Area Med. Ctr., Inc.</u>, 562 F.3d 599, 615 (4th Cir. 2009).

Plaintiffs indicate in the case caption that they sue Defendants Johnson and Jones in their individual and official capacities (together "Individual Defendants"). (Compl. (Doc. 1) at 1.) Plaintiffs sue Doe Deputies 1-10 solely in their individual capacities. (<u>Id.</u> ¶ 9.)

The court will address the claims made against Individual Defendants in their individual and official capacities in turn.

### 1.   Claims Against Individual Defendants in Their Individual Capacities

Government officials sued in their individual capacities are "persons" within the meaning of § 1983 and are not absolutely immune from suit. <u>Hafer v. Melo</u>, 502 U.S. 21, 31 (1991). A government official sued in their individual capacity under § 1983 may, however, be entitled to qualified immunity. <u>Id.</u> at 25 ("[O]fficials sued in their personal capacities . . . may assert personal immunity defenses such as objectively reasonable reliance on existing law.").

### a.   Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

known.'" <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)). "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" <u>Id.</u> (quoting <u>Groh v. Ramirez</u>, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)). Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985) (emphasis omitted). "The burden of proof and persuasion with respect to a claim of qualified immunity is on the defendant official." <u>Wilson v. Kittoe</u>, 337 F.3d 392, 397 (4th Cir. 2003); <u>see also</u> <u>Cloaninger ex rel. Estate of Cloaninger v. McDevitt</u>, 555 F.3d 324, 332 n.10 (4th Cir. 2009) ("The burden of pleading qualified immunity lies on the defendants.").

In determining whether qualified immunity applies, courts must engage in a two-step test "that asks first whether a constitutional violation occurred and second whether the right violated was clearly established." <u>Gregg v. Ham</u>, 678 F.3d 333, 338-39 (4th Cir. 2012) (quoting <u>Henry v. Purnell</u>, 652 F.3d 524, 531 (4th Cir. 2011) (en banc)). "In determining whether a right is clearly established, courts consider 'whether it would be

clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Id. at 339 (quoting Henry, 652 F.3d at 534). This test, however, need not proceed in this sequence; "[t]he judges of the district courts and the courts of appeals [may] exercise their sound discretion in deciding which of the two prongs . . . should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236.

For each of Plaintiffs' § 1983 Causes of Action, the court will determine whether the facts in the Complaint allege a violation of a constitutional right. Then, if the Complaint does allege a violation, the court will determine whether that right was clearly established at the time of the alleged violation.

### b.  First and Seventh Causes of Action: § 1983 Claims for Failure to Investigate

The First and Seventh Causes of Action allege that Defendants "are liable to Plaintiffs for their failure, incompetence and/or negligence as supervisory and/or managerial officers in investigating the facts, resulting in the deprivations of Plaintiffs' rights, privileges or immunities

secured by the United States Constitution," under § 1983.[4]
(Compl. (Doc. 1) ¶¶ 43, 68.)

"Police officers may be liable under § 1983 for deliberate
or reckless failures to investigate 'readily available
exculpatory evidence.'" Humbert v. O'Malley, Civil No. WDQ–11–
0440, 2014 WL 1266673, at *13 (D. Md. Mar. 25, 2014) (quoting
Savage v. Cty. of Stafford, 754 F. Supp. 2d 809, 815–16 (E.D.
Va. 2010) (collecting cases); see also Baker v. McCollan, 443
U.S. 137 at 141–46 (1979) (holding that a plaintiff, arrested
pursuant to a valid warrant and who was incarcerated for eight
days until police discovered he was innocent, could not state a
§ 1983 claim for want of a constitutional deprivation, and
asserting law enforcement is not constitutionally required to
"perform an error-free investigation").

Plaintiffs allege "Defendants allowed his officers who
acted under his authority to stop detain and arrest the
Plaintiffs without any prior investigation and or corroboration
of any information that had been received." (Compl. (Doc. 1)
¶ 41.)

First, "prior investigation" is not a prerequisite to an
arrest; probable cause for arrest may develop at the time of the

---

[4] While these two Causes of Action could be construed as
alleging negligent supervision claims, the court will address
this issue in its discussion of the Second and Eighth Causes of
Action and will not do so here.

–14–

arrest. See Devenpeck v. Alford, 543 U.S. 146, 152 (2004) ("[A]
warrantless arrest by a law officer is reasonable under the
Fourth Amendment where there is probable cause to believe that a
criminal offense has been or is being committed," and "[w]hether
probable cause exists depends upon the reasonable conclusion to
be drawn from the facts known to the arresting officer at the
time of the arrest." (emphasis added)). The allegation described
above alleging no "prior investigation" therefore does not
establish wrongdoing.

Second, regarding corroboration of any information
received, there are no allegations in the Complaint to suggest
that there was any specific exculpatory evidence available, let
alone allegations that such evidence was "readily available" to
Defendants. See Johnson v. Hammett, Civil Action No. ELH-18-
1059, 2019 WL 7185559, at *14 (D. Md. Dec. 23, 2019); Small v.
Tate, Civil No. 2:18cv315, 2019 WL 446594, at *5-7 (E.D. Va.
Jan. 29, 2019). Plaintiffs therefore fail to plausibly allege a
constitutional violation necessary to state a § 1983 claim.

To the extent Plaintiffs allege negligent failure to
investigate, either generally or with respect to exculpatory
evidence specifically, their causes of action also fail.
Negligent police failures to investigate do not violate the
Fourteenth Amendment. See Daniels v. Williams, 474 U.S. 327, 336
(1986); Humbert, 2014 WL 1266673, at *13. Thus, if Plaintiffs

-15-

are in fact alleging negligent failure to investigate, that claim must fail.

Plaintiffs have not shown a "clearly established right" to either a negligence-free investigation in general or a negligence-free investigation of exculpatory information in particular. See Wadkins v. Arnold, 214 F.3d 535, 541 (4th Cir. 2000) ("Reasonable law enforcement officers are not required to exhaust every potentially exculpatory lead or resolve every doubt about a suspect's guilt before probable cause is established."). The court will dismiss Plaintiffs' First and Seventh Causes of Action against Individual Defendants in their individual capacities under Rule 12(b)(6) for failure to plausibly allege violations of a constitutional right.

        c.    **Second and Eighth Causes of Action: § 1983 Claims for Negligent Supervision, Failure to Train, and Failure to Supervise**

These claims are against Defendants Johnson and Jones in their individual capacities. Plaintiffs' Second Cause of Action alleges Defendants Johnson and Jones "had supervisory authority and supervised and or hired" Doe Deputies 1-10 and are "are liable to Plaintiff[s] for their inadequate and/or negligent supervision and control as supervisory and/or managerial officers of their subordinates." (Compl. (Doc. 10) ¶¶ 45, 50.) Plaintiffs' Eighth Cause of Action alleges Defendants Johnson and Jones "improperly and/or negligently trained, supervised,

monitored and/or disciplined Doe Deputies 1-10 and their subordinate officers." (Id. ¶ 70.)

### i. __Negligent Supervision__

"[I]nsofar as plaintiffs' claims sound in generic negligence, the Due Process Clause 'is simply not implicated' by acts of official carelessness." Safar v. Tingle, 859 F.3d 241, 245 (4th Cir. 2017) (quoting Daniels, 474 U.S. at 328). A claim for negligence is not actionable under § 1983. See Cty. of Sacramento v. Lewis, 523 U.S. 833, 849 (1998) ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."); Cooley v. Health Auth. Yates, Case No. 7:19CV00589, 2019 WL 5207905, at *2 (W.D. Va. Oct. 16, 2019) ("[A]n official's merely negligent action or inaction is not sufficient to give rise to a constitutional claim and, accordingly, is not actionable under § 1983."). Plaintiffs therefore cannot state a § 1983 claim for negligent supervision.

### ii. __Failure to Train__

To state a failure-to-train claim under § 1983, a plaintiff must plead that: "(1) the subordinates actually violated the plaintiff's constitutional or statutory rights; (2) the supervisor failed to properly train the subordinates, illustrating a 'deliberate indifference' to the rights of the persons with whom the subordinates come into contact; and (3)

this failure to train actually caused the subordinates to violate the plaintiff's rights." Staton v. Doe, Civil Action No. 6:15cv34, 2016 WL 6493418, at *4 (W.D. Va. Oct. 12, 2016); see also Jones v. Chapman, Civil Action No. ELH-14-2627, 2015 WL 4509871, at *18 (D. Md. July 24, 2015).

Plaintiffs fail to include any nonconclusory facts that would plausibly allege that Doe Deputies 1-10 "actually violated [Plaintiffs'] constitutional or statutory rights"; that Defendants Johnson and Jones "failed to properly train the subordinates, illustrating a 'deliberate indifference' to the rights of the persons with whom the subordinates come into contact," or that "this failure to train actually caused the subordinates to violate [Plaintiffs'] rights." Plaintiffs instead only allege Defendants Johnson and Jones "improperly and/or negligently trained, supervised, monitored and/or disciplined Doe Deputies 1-10 and their subordinate officers." (Compl. (Doc. 1) ¶ 70.) This, again, is merely a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements, [which] do[es] not suffice." Iqbal, 556 U.S. at 678.

Plaintiffs therefore fail to state a plausible claim for failure to train under § 1983.

### iii.      **Failure to Supervise**

Plaintiffs allege Defendants Johnson and Jones are personally subject to supervisory liability under § 1983. (Compl. (Doc. 1) ¶¶ 50, 70.)

A public official or agent "may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Iqbal, 556 U.S. at 676; see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004) (finding no respondeat superior liability under § 1983). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676.

To state a failure-to-supervise claim under § 1983, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injuries to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Johnson v. City of Fayetteville, 91 F. Supp. 3d 775, 812
(E.D.N.C. 2015) (quoting Shaw v. Stroud, 13 F.3d 791, 799 (4th
Cir. 1994)).

To establish the first element, knowledge, a plaintiff must
show "(1) the supervisor's knowledge of (2) conduct engaged in
by a subordinate (3) where the conduct poses a pervasive and
unreasonable risk of constitutional injury to the plaintiff."
Shaw, 13 F.3d at 799. In turn, in order to establish a
"pervasive" or "unreasonable" risk of harm, a plaintiff must
proffer "evidence that the conduct is widespread, or at least
has been used on several different occasions and that the
conduct engaged in by the subordinate poses an unreasonable risk
of harm of constitutional injury." Id.

As to the second element, "a plaintiff [o]rdinarily . . .
cannot satisfy his burden of proof by pointing to a single
incident or isolated incidents . . . for a supervisor cannot be
expected . . . to guard against the deliberate criminal acts of
his properly trained employees when he has no basis upon which
to anticipate the misconduct." Randall v. Prince George's Cty.,
302 F.3d 188, 206 (4th Cir. 2002) (internal quotation marks
omitted). "Deliberate indifference, however, may be satisfied by
showing [a] supervisor's continued inaction in the face of
documented widespread abuses." Id. (alteration in original)
(internal quotation marks omitted).

For the third element, "proof of causation may be direct
. . . where the policy commands the injury of which the
plaintiff complains . . . or may be supplied by the tort
principle that holds a person liable for the natural
consequences of his actions." Wilkins v. Montgomery, 751 F.3d
214, 226–27 (4th Cir. 2014) (omissions in original) (quoting
Shaw, 13 F.3d at 799).

Plaintiffs again rely on "[t]hreadbare recitals of the
elements of a cause of action, supported by mere conclusory
statements," such as allegations that Defendant Johnson "failed
to take appropriate remedial action against himself, deputy
sheriffs, law enforcement officers and corrections officers who
engage in harassing behavior against citizens," (Compl. (Doc. 1)
¶ 12); that he "encourage[ed] and tolerat[ed] a pattern and
practice of false illegal arrests and seizures, of deprivation
of the rights of citizens without due process of law, of
harassment of citizens, and of slander and defamation of
citizens and their reputations," (id. ¶ 13); and that Defendants
Johnson and Jones "knew or should have known about Defendants
Doe Deputies 1-10's incompetence and that the investigations
were untrue and or that there were no independent corroboration
and or investigations to support these allegations and their
veracity," (id. ¶ 47).

At no point do Plaintiffs allege any specific facts as to any prior incidents or conduct that would tend to show Defendants Johnson and Jones were "deliberately indifferent to a pervasive and unreasonable risk of unconstitutional action" by Doe Deputies 1-10. Plaintiffs' claim for supervisory liability under § 1983 against Defendants Jones and Johnson in their individual capacities must fail. See Jones, 2015 WL 4509871, at *26.

### iv.    Second and Eighth Causes of Action Conclusion

Because Plaintiffs failed to state claims for negligent supervision, failure to train, and failure to supervise, the court will dismiss Plaintiffs' Second and Eighth Causes of Action under Rule 12(b)(6) against Defendants Johnson and Jones in their individual capacities.

### d.    Third Cause of Action: § 1983 Claim for and Malicious Prosecution and Abuse of Process

The Third Cause of Action alleges Individual Defendants "are liable to Plaintiffs for having maliciously prosecuted them in deprivation of their rights, privilege or immunities secured by the United States Constitution, pursuant to 42 U.S.C. Section 1983 and further abused process in a bid to further harass Plaintiffs and their families." (Compl. (Doc. 1) ¶ 55.)

Plaintiffs' Third Cause of Action also alleges abuse of process "to further harass Plaintiffs and their families."

(Compl. (Id.) The court will consider each of these claims in turn.

## i. **Malicious Prosecution**

Plaintiffs do not explicitly ground their malicious prosecution § 1983 claim in a specific constitutional right. The court, however, views Plaintiffs' allegations as a malicious prosecution claim implicating the Fourth Amendment's guarantee against unreasonable search and seizure, because "'allegations that an arrest made pursuant to a warrant was not supported by probable cause, or claims seeking damages for the period after legal process issued' — e.g., post-indictment or arraignment — are considered a § 1983 malicious prosecution claim." Humbert v. Mayor & City Council of Balt. City, 866 F.3d 546, 555 (4th Cir. 2017) (quoting Brooks v. City of Winston-Salem, 85 F.3d 178, 182 (4th Cir. 1996)); see Smith v. Munday, 848 F.3d 248, 257 (4th Cir. 2017) ("[A] claim for malicious prosecution alleges that an arrest made pursuant to a warrant lacked probable cause."). "Such a claim 'is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort.'" Humbert, 866 F.3d at 555 (quoting Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012)). "To succeed, a plaintiff must show that 'the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings

terminated in [the] plaintiff's favor.'" Id. (quoting Evans, 703
F.3d at 647).

The Fourth Amendment to the United States Constitution
protects "against unreasonable searches and seizures." U.S.
Const. amend. IV. "An arrest is a seizure of the person."
Wilson, 337 F.3d at 398 (quoting Rogers v. Pendleton, 249 F.3d
279, 290 (4th Cir. 2001)). "'[T]he general rule [is] that Fourth
Amendment seizures are "reasonable" only if based on probable
cause' to believe that the individual has committed a crime."
Bailey v. United States, 568 U.S. 186, 192 (2013) (quoting
Dunaway v. New York, 442 U.S. 200, 213 (1979)).

With respect to § 1983 claims based on arrests without
probable cause, "[w]here . . . an arrest is based on probable
cause, it cannot result in a constitutional violation. And in
the absence of a constitutional violation, qualified immunity
applies and the court need not address whether the
constitutional right in question was clearly established."
Cranford v. Kluttz, 278 F. Supp. 3d 848, 873 (M.D.N.C. 2017)
(quoting Swick v. Wilde, No. 1:10-cv-303, 2012 WL 3780350, at *9
(M.D.N.C. Aug. 31, 2012)); see also Durham v. Horner, 690 F.3d
183, 190 (4th Cir. 2012) (finding there was probable cause for
the plaintiff's arrest and thus "he ha[d] not shown the
essential constitutional violation underlying a § 1983 claim");
Sowers v. City of Charlotte, No. 3:14-cv-523-RJC-DCK, 2015 WL

8491498, at *4 (W.D.N.C. Dec. 9, 2015) ("Because the officers had probable cause, Plaintiff's arrest was valid, and there was no violation of his constitutional rights. There is accordingly no basis for a finding of any liability on the part of the defendant officers under federal or state law.").

"Probable cause to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed . . . an offense." Cahaly v. Larosa, 796 F.3d 399, 407 (4th Cir. 2015) (quoting Michigan v. DeFillippo, 443 U.S. 31, 37 (1979) (internal quotation marks omitted)). Probable cause requires an evaluation of the "facts and circumstances within the officer's knowledge" and permits the drawing of reasonable inferences from those facts and circumstances. United States v. Humphries, 372 F.3d 653, 657–58 (4th Cir. 2004). The fact that charges were later dismissed, however, is not sufficient on its own to demonstrate an absence of probable cause. See Durham, 690 F.3d at 187, 190 (holding that the plaintiff could not establish his arrest was performed without probable cause even after the prosecutor dismissed the three indictments against him); Hullender v. City of Kings Mountain, No. 1:01-CV-41-C, 2002 WL 1919560, at *3 (W.D.N.C. Aug. 16, 2002) ("The fact that a state magistrate found probable cause, but later in the week "unfound"

-25-

probable cause, <u>or that the state later dismissed the charge</u>, is simply not relevant to whether the officer at the time of arrest actually had probable cause." (emphasis added)).

Warrants for arrest must also be supported by probable cause. U.S. Const. amend. IV. Of course, "obtaining an arrest warrant does not provide per se evidence" that the warrant was proper or that the officer was objectively reasonable in believing it so. <u>Torchinsky v. Siwinski</u>, 942 F.2d 257, 262 (4th Cir. 1991).

In cases challenging an arrest made pursuant to a warrant for lack of probable cause, plaintiffs tend to attack the warrant process. <u>See, e.g.</u>, <u>Miller v. Prince George's Cty.</u>, 475 F.3d 621, 627 (4th Cir. 2007); <u>Bonnell v. Beach</u>, 408 F. Supp. 3d 733, 749 (E.D. Va. 2019); <u>Matusiewicz v. Florence Cty. Sheriff's Office</u>, C/A No. 4:16-cv-01595-DCC-KDW, 2019 WL 3416616, at *4 (D.S.C. May 30, 2019); <u>United States v. Lyles</u>, No. TDC-17-0039, 2017 WL 5633093, at *2 (D. Md. Nov. 20, 2017).

> A party challenging the veracity of a warrant application must show that the officer(s) deliberately or with a "reckless disregard for the truth" made material false statements in the warrant application, or omitted from that application "material facts with the intent to make, or with reckless disregard of whether they thereby made, the [application] misleading."

<u>Humbert</u>, 866 F.3d at 556 (quoting <u>Franks v. Delaware</u>, 438 U.S. 154, 171 (1978) and <u>United States v. Colkley</u>, 899 F.2d 297, 300

(4th Cir. 1990)). A plaintiff may demonstrate reckless disregard

by submitting evidence of an "officer acting 'with a high degree

of awareness of [a statement's] probable falsity,' meaning that

'when viewing all the evidence, the affiant must have

entertained serious doubts as to the truth of his statements or

had obvious reasons to doubt the accuracy of the information he

reported.'" Id. (quoting Miller, 475 F.3d at 627). Nevertheless,

"[r]easonable law enforcement officers are not required to

exhaust every potentially exculpatory lead or resolve every

doubt about a suspect's guilt before probable cause is

established." Wadkins, 214 F.3d at 541 (internal quotation marks

omitted).

"Moreover, a plaintiff must demonstrate that the false

statement or omission is material, 'that is, necessary to the

[neutral and disinterested magistrate's] finding of probable

cause.'" Humbert, 866 F.3d at 556 (quoting Miller, 475 F.3d at

628). "To determine materiality, the Court must 'excise the

offending inaccuracies and insert the facts recklessly omitted,

and then determine whether or not the corrected warrant

affidavit would establish probable cause.'" Id. (quoting Miller,

475 F.3d at 628).

Plaintiffs acknowledge that they were arrested for felony

common law obstruction of justice and felony obtaining property

by false pretenses pursuant to a warrant, (Compl. (Doc. 1)

¶¶ 14), therefore their probable cause challenge necessarily attacks the sufficiency of the warrant, see Porterfield v. Lott, 156 F.3d 563, 568-70 (4th Cir. 1998) ("[A]llegations that an arrest made pursuant to a warrant was not supported by probable cause . . . are analogous to the common-law tort of malicious prosecution." (quoting Brooks, 85 F.3d at 181-82)); McConnell v. Watauga Cty., No. 5:17-cv-195-MOC-DCK, 2019 WL 2344223, at *4 (W.D.N.C. May 31, 2019), aff'd, 790 F. App'x 543 (4th Cir. 2020) ("[A]n officer who arrests a suspect pursuant to a warrant does not violate the Fourth Amendment unless that officer did not possess probable cause to seek the warrant."); Lancaster v. Williams, Civil Action No. 3:09-1989-CMC, 2010 WL 2571873, at *3-4 (D.S.C. June 21, 2010) ("The viability of [a Fourth Amendment] claim would turn on the facial validity of the warrant."); Medows v. City of Cayce, Civil Action No. 3:07-409-HFF-BHH, 2008 WL 2537131, at *3 (D.S.C. June 24, 2008) ("To prevail on a [§ 1983] claim for malicious prosecution against the defendants, the plaintiff must demonstrate that the magistrate judge did not have probable cause to issue the arrest warrant and that the arresting officer should have known that such cause was lacking when the warrant was requested."); Sirak v. Collins, No. 5:07-CV-7-D, 2007 WL 9718657, at *2 (E.D.N.C. Oct. 3, 2007) ("Plaintiff does not challenge the validity of the

warrants for his arrest. Thus, he cannot establish that the officers lacked legal authority to arrest him.").

In North Carolina, under N.C. Gen. Stat. § 15A-304(d), "[a] judicial official may issue a warrant for arrest only when he is supplied with sufficient information, supported by oath or affirmation, to make an independent judgment that there is probable cause to believe that a crime has been committed and that the person to be arrested committed it." Further, a law enforcement officer "[m]ust, with respect to any person arrested without a warrant and, for purpose of setting bail, with respect to any person arrested upon a warrant or order for arrest, take the person arrested before a judicial official without unnecessary delay." N.C. Gen. Stat. § 15A-501(2).

While Plaintiffs do not explicitly attack the warrant for lacking probable cause, the court construes Plaintiffs' allegations that they were arrested "without prior investigation" or corroboration, that they were held in Alamance County jail for several days without probable cause, and that a district court judge reduced their bond from $3,000,000 to $10,000 each "upon hearing the scanty allegations against Plaintiffs," as challenging a lack of probable cause in the warrant. (Compl. (Doc. 1) ¶¶ 16-17, 41.)

The Complaint contains no allegations specifically attacking the warrant or arrest process at all. The Complaint is

devoid of any facts tending to show that the officers "deliberately or with a reckless disregard for the truth made material false statements in the warrant application," or "omitted from that application material facts with the intent to make, or with reckless disregard of whether they thereby made, the [application] misleading." Humbert, 866 F.3d at 556 (internal quotation marks omitted).

The Complaint contains only conclusory and vague allegations regarding the existence of probable cause. For example, Plaintiffs allege "Defendants knew that the maliciously obtained documents had no truth to it and had not been thoroughly investigated, but continued to use the ill-gotten information to threaten harass and intimidate Plaintiffs." (Compl. (Doc. 1) ¶ 54.) There are no facts in the Complaint tending to show what these documents were or what these documents contained which would allow the court to draw the reasonable inference that Defendants lacked probable cause. Plaintiffs further allege "Defendants maliciously prosecuted the Plaintiffs without any justification and that it was done with no legal justification." (Id. ¶ 52.) This is nothing more than a legal conclusion, which cannot support a plausible claim for relief. Iqbal, 556 U.S. at 678.

Finally, the fact that the charges against Plaintiffs were dismissed cannot serve as the basis for finding a lack of probable cause. See Durham, 690 F.3d at 187, 190.

The court finds that all of these allegations are nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which] do not suffice." Iqbal, 556 U.S. at 678. The court cannot "ignore a clear failure in the pleadings to allege any facts which set forth a claim." Estate of Williams-Moore, 335 F. Supp. 2d at 646. Plaintiffs fail to include any nonconclusory fact that there was no probable cause for their arrest. Because these allegations do not allow the court to "infer more than the mere possibility of misconduct," Plaintiffs' claim for malicious prosecution under § 1983 will be dismissed.

### ii.  **Abuse of Process**

Plaintiffs' Third Cause of Action also alleges abuse of process "to further harass Plaintiffs and their families." (Compl. (Doc. 1) ¶ 55.) This includes allegations that Defendants filed frivolous charges "to demean and ridicule Plaintiffs," and used "ill-gotten information to threaten harass and intimidate Plaintiffs." (Id. ¶¶ 53–54.)

"A § 1983 abuse of process claim, like a state claim for abuse of process, emphasizes the difference between improper initiation and improper use of process; each requires improper

use as a necessary element." <u>Ballock v. Costlow</u>, Civil Action No. 1:17CV52, 2019 WL 7038263, at *5 (N.D. W. Va. Dec. 20, 2019) (citing <u>Cook v. Sheldon</u>, 41 F.3d 73, 80 (2d Cir. 1994)); <u>see also</u> <u>Lackawanna Transp. Co. v. Hughes</u>, Civil Action No. 5:16CV19, 2016 WL 6459804, at *7 (N.D. W. Va. Oct. 31, 2016) (noting that the Supreme Court "has not considered the misuse of process itself to be redressable," instead, such a claim would address the "deprivation of [a protected life, liberty, or property] interest that would be redressable under the concept of substantive due process and not the abuse of process itself"); <u>Cramer v. Crutchfield</u>, 496 F. Supp. 949, 952 (E.D. Va. 1980), <u>aff'd</u>, 648 F.2d 943 (4th Cir. 1981) (finding that the plaintiff's abuse of process and malicious prosecution claims failed because "he was accorded the full measure of the due process of law to which he was entitled under the Fourteenth Amendment"). "Although the Fourth Circuit has not explicitly analyzed the nature of an abuse of process claim under § 1983, other circuits have held that abuse of process is, in effect, a denial of procedural due process." <u>Ballock</u>, 2019 WL 7038263, at *5.

As summarized in the malicious prosecution section, in North Carolina, a judicial official may only issue a warrant for arrest upon a showing of probable cause, or, if a law enforcement officer makes an arrest without a warrant, the law

enforcement officer must take the arrested person in front of a judicial official "without unnecessary delay." N.C. Gen. Stat. §§ 15A-304(d), 15A-501(2).

Here, Plaintiffs fail to include any facts tending to show an "improper use of process" or that they were deprived of due process in any way. The Complaint contains no facts concerning the warrant process, nor any facts concerning whether or when they were taken in front of a judicial official for a probable cause hearing. Plaintiffs only allege Defendants used "frivolous charges . . . to demean and ridicule Plaintiffs through his statements and press conferences." (Compl. (Doc. 1) ¶ 53.) Allegations concerning Defendants' public statements cannot support an abuse of process claim because those allegations are unrelated to the procedural due process Plaintiffs received.

Plaintiffs thus do not include any "factual content that allows the court to draw the reasonable inference that the defendant is liable and demonstrates more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (internal quotation marks omitted). The court will therefore also dismiss Plaintiff's § 1983 claim for abuse of process.

### iii. **Third Cause of Action Conclusion**

Because Plaintiffs fail to plausibly state claims for malicious prosecution or abuse of process under § 1983,

Plaintiffs' Third Cause of Action will be dismissed under Rule
12(b)(6).[5]

### e. Fourth Cause of Action: § 1983 Claim for Invasion of Privacy

Plaintiffs' Fourth Cause of Action alleges Defendants "are
liable to Plaintiffs for having invaded his privacy and
disparaged his integrity in deprivation of his rights,
privileges of immunities secured by the United States
Constitution, in violation of 42 U.S.C. Section 1983." (Compl.
(Doc. 1) ¶ 57.)

Individuals have a general Fourth Amendment right to
privacy. "The basic purpose of this Amendment . . . is to
safeguard the privacy and security of individuals against
arbitrary invasions by governmental officials." Carpenter v.
United States, 585 U.S. ____, ____, 138 S. Ct. 2206, 2213
(2018). A claim for invasion of privacy implicates the "same
interest in preserving the privacy and the sanctity of the home
[as warrantless entry rights], and justify the same level of
constitutional protection" under the Fourth Amendment. Payton v.
New York, 445 U.S. 573, 588 (1980).

---

[5] "There is support for the position that in the absence of
a constitutional violation, a defendant prevails not because of
qualified immunity but because the plaintiff has failed to
demonstrate an essential element of a section 1983 claim. In any
event, the result is the same here." Swick, 2012 WL 3780350, at
*9 n.15 (citing Purnell, 501 F.3d at 378 n.3).

The Complaint, however, fails to include any allegations of Individual Defendants' actions that they allegedly violated Plaintiffs' privacy rights. Instead, it seems to the court that Plaintiffs are attempting to use § 1983 to bring a state law invasion-of-privacy claim, based on Plaintiffs' focus on Individual Defendants' statements and the effect those statements allegedly have had on Plaintiffs.

Plaintiffs have not invoked the Fourth Amendment and do not ground this § 1983 claim in any cognizable right, and Defendants have not treated this cause of action as grounded in a cognizable constitutional or statutory right. The court declines to do so <u>sua sponte</u>. Because Plaintiffs fail to invoke a cognizable constitutional or statutory right, Plaintiffs fail to state a § 1983 violation. The court will therefore dismiss Plaintiffs' Fourth Cause of Action under Rule 12(b)(6).

**f.    <u>Sixth Cause of Action: § 1983 Claim for Defamation</u>**

Plaintiffs' allegations of defamation, slander, and libel fail to state a cognizable claim under § 1983. Although state law provides for a right of action for slander or defamation, <u>see, e.g.,</u> <u>Desmond v. News & Observer Publ'g Co.</u>, 241 N.C. App. 10, 16–17, 772 S.E.2d 128, 134–35, <u>appeal dismissed and disc. rev. denied</u>, 368 N.C. 289, 776 S.E.2d 195 (2015), an alleged act of defamation of character or injury to reputation is not

actionable under § 1983, see Siegert v. Gilley, 500 U.S. 226,

233 (1991) ("Defamation, by itself, is a tort actionable under

the laws of most States, but not a constitutional

deprivation."). A § 1983 action may not be "based alone on a

violation of state law or on a state tort." Clark v. Link, 855

F.2d 156, 161 (4th Cir. 1988). "Thus, Plaintiff[s'] allegations

concerning the purely state law claim of defamation fail to

establish a claim for a violation of a federal right as required

under § 1983, and therefore [their] claim must be dismissed."

Woodruff v. Spartanburg City Police Dep't, C/A No. 7:18-1920-

BHH-JDA, 2018 WL 4017683, at *3 (D.S.C. July 30, 2018); see also

Allen v. Glines, No. 1:19cv793, 2019 WL 6467810, at *3 (M.D.N.C.

Dec. 2, 2019) (dismissing defamation claim brought under § 1983

for failing to state a cause of action).

The court will dismiss Plaintiffs' Sixth Cause of Action

under Rule 12(b)(6).

### g. Fifth Cause of Action: § 1983 Claim for Severe Humiliation and Embarrassment

Plaintiffs' Fifth Cause of Action only alleges Defendants

"are liable to Plaintiffs for having caused him severe

humiliation and embarrassment" in violation of their rights.

(Compl. (Doc. 1) ¶ 59.) This cause of action suffers from the

same deficiency as Plaintiffs' Fourth Cause of Action:

Plaintiffs simply fail to ground this claim in a cognizable right.

A plaintiff, however, may seek compensatory damages for emotional distress resulting from a constitutional violation in a § 1983 claim. See Price v. City of Charlotte, 93 F.3d 1241 (4th Cir. 1996). The Fourth Circuit in Price examined the robust Supreme Court precedent holding that a plaintiff may seek compensatory damages for emotional distress resulting from a violation. Id. at 1245–48; see also Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 307 (1986) ("[C]ompensatory damages [for constitutional violations] may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation . . . , personal humiliation, and mental anguish and suffering." (omission in original) (internal quotation marks omitted)); Carey v. Piphus, 435 U.S. 247, 264 (1978) (holding that emotional and mental distress caused by a denial of procedural due process is compensable under § 1983). The Fourth Circuit, however, repeatedly emphasized that the "emotional distress . . . must find its genesis in the actual violation." Price, 93 F.3d at 1250.

Plaintiffs' Fifth Cause of Action thus should properly be understood as a claim for compensatory damages resulting from a constitutional violation. Plaintiffs, however, have failed to plausibly allege a constitutional violation in any of their

§ 1983 claims. The court will therefore dismiss Plaintiffs'
Fifth Cause of Action under Rule 12(b)(6).

### 2. <u>Claims Against Individual Defendants in Their Official Capacities</u>

Plaintiffs bring eight § 1983 claims against Defendants
Johnson and Jones in their official capacities.

"[A] suit against a sheriff in his official capacity
constitutes a suit against a local governmental entity, i.e., a
sheriff's office." <u>Simmons v. Corizon Health, Inc.</u>, 122 F. Supp.
3d 255, 267 (M.D.N.C. 2015) (alteration in original) (quoting
<u>Parker v. Burris</u>, No. 1:13CV488, 2015 WL 1474909, at *6
(M.D.N.C. Mar. 31, 2015)); <u>see also</u> <u>Kentucky v. Graham</u>, 473 U.S.
159, 165 (1985) ("Official-capacity suits, in contrast,
generally represent only another way of pleading an action
against an entity of which an officer is an agent." (internal
quotation marks omitted)).

In order to state a claim against Defendants Johnson and
Jones in their official capacities, Plaintiffs "must allege that
the alleged constitutional violations resulted from an official
policy or custom of the Sheriff's office." <u>Evans v. Guilford
Cty. Det. Ctr.</u>, No. 1:13CV499, 2014 WL 4641150, at *3 (M.D.N.C.
Sept. 16, 2014); <u>see</u> <u>Lytle v. Doyle</u>, 326 F.3d 463, 471 (4th Cir.
2003) ("[N]ot every deprivation of a constitutional right will
lead to municipal liability. Only in cases where the

-38-

municipality causes the deprivation 'through an official policy or custom' will liability attach." (quoting Carter v. Morris, 164 F.3d 215, 218 (1999))).

> A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

Lytle, 326 F.3d at 471 (quoting Carter, 164 F.3d at 217).

However, "'isolated incidents' of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice for § 1983 purposes." Id. at 473. But, "for the purposes of surviving a motion to dismiss, a plaintiff 'need not plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence of an official policy or custom and causation.'" Moody v. City of Newport News, 93 F. Supp. 3d 516, 542 (E.D. Va. 2015) (quoting Jordan ex rel. Jordan v. Jackson, 15 F.3d 333, 339 (4th Cir. 1994)).

Here, Plaintiffs submit a veritable laundry list of conclusory allegations concerning policies and custom. For example, they allege that:

> [i]t is the policy, practice and custom of the Defendant Sheriff Terry Johnson to himself participate

in and permit deputy sheriffs to make false and
illegal arrests, to deprive citizens of their liberty
without due process of law, to maliciously prosecute
citizens, to routinely engage in harassing conduct
against citizens, and to slander and defame citizens
and their reputations. It is also the policy, practice
and custom of Defendant Sheriff Terry Johnson to
employ as deputy sheriffs, law enforcement officers
and corrections officer's [sic] persons who have not
been properly trained.

(Compl. (Doc. 1) ¶ 12; see also id. ¶ 13.)

Plaintiffs fail to submit sufficient facts to plausibly
"allege that the alleged constitutional violations resulted from
an official policy or custom of the Sheriff's office" resulting
from any of the four ways considered in Lytle. Evans, 2014 WL
4641150, at *3.

First, Plaintiffs do not allege the existence of an express
policy. Second, the court construes Plaintiffs' allegation that
Defendant Johnson ratified a pattern of unlawful behavior as an
allegation of a custom, policy, or practice created by the
decision of one with final policymaking authority. Plaintiffs
fail to submit any supporting facts, however, concerning how
Defendant Johnson ratified a pattern of unlawful behavior and
whether and how he has final policymaking authority. Instead,
Plaintiffs submit nothing but legal conclusions, which is
insufficient to state a plausible claim for relief. Iqbal, 556
U.S. at 678.

Third, Plaintiffs allege that Defendant Johnson has created
a custom, policy, and practice through an omission by "fail[ing]

to properly train officers." Specifically, Plaintiffs allege
Defendant Johnson "has failed to adequately train, supervise and
control himself, deputy sheriffs, law enforcement officers and
corrections officers." (Compl. (Doc. 1) ¶ 12.) The court has
already found that Plaintiffs fail to submit sufficient facts to
plausibly allege a failure to train cause of action. See Part
III.B.1.c.ii. Plaintiffs fail to submit any supporting facts;
they do not allege how Defendant Johnson has failed to
adequately train his subordinates. Plaintiffs' allegation is
merely a "[t]hreadbare recital[] of the elements of a cause of
action, supported by mere conclusory statements, [which] do[es]
not suffice." Iqbal, 556 U.S. at 678. Plaintiffs therefore fail
to plausibly allege a custom, policy, or practice based on
Defendant Johnson's alleged failure to train.

Fourth, Plaintiffs allege "a practice that is so
'persistent and widespread' as to constitute a 'custom or usage
with the force of law.'" Lytle, 326 F.3d at 471 (quoting Carter,
164 F.3d at 217). They allege that it is the policy, practice,
and custom of Defendant Johnson to permit false and illegal
arrests, "to deprive citizens of their liberty without due
process of law, to maliciously prosecute citizens, to routinely
engage in harassing conduct against citizens, and to slander and
defame citizens and their reputations." (Compl. (Doc. 1) ¶ 12.)
While "[t]here is no requirement that [Plaintiffs]. . . plead[]

-41-

multiple instances of constitutional violations" at the pleading stage, Jordan ex rel. Jordan, 15 F.3d at 339, Plaintiffs failed to plausibly allege even one instance of unconstitutional conduct. Further, even if Plaintiffs had plausibly alleged one instance of unconstitutional conduct, Plaintiffs' allegations of Defendants' patterns and practices consist solely of legal conclusions and lack sufficient factual content as to "nudge[] the[] claims across the line from conceivable to plausible." Twombly, 500 U.S. at 555, 570.

Plaintiffs' § 1983 claims (Causes of Action One through Eight) against Individual Defendants in their official capacities are therefore dismissed for failure to state a claim under Rule 12(b)(6).

## C. <u>Plaintiffs' State Law Claims</u>

Plaintiffs bring the following state law claims: intentional infliction of emotional distress, (Compl. (Doc. 1) ¶¶ 71-78), malicious prosecution and abuse of process, (id. ¶¶ 79-92), slander and defamation, (id. ¶¶ 93-100), and negligent infliction of emotional distress, (id. ¶¶ 101-09).

### 1. <u>Sovereign and Public Official Immunity</u>

"A motion to dismiss based on sovereign immunity is a jurisdictional issue." M Series Rebuild, LLC v. Town of Mount Pleasant, Inc., 222 N.C. App. 59, 62, 730 S.E.2d 254, 257 (2012). The North Carolina Court of Appeals has concluded that

"the general rule is that sovereign immunity presents a question of personal jurisdiction, not subject matter jurisdiction." Green v. Kearney, 203 N.C. App. 260, 265, 690 S.E.2d 755, 760 (2010); see also Meherrin Indian Tribe v. Lewis, 197 N.C. App. 380, 384, 677 S.E.2d 203, 207 (2009) ("[A]n appeal of a motion to dismiss based on sovereign immunity presents a question of personal jurisdiction rather than subject matter jurisdiction." (quoting Data Gen. Corp. v. Cty. of Durham, 143 N.C. App. 97, 100, 545 S.E.2d 243, 245–46 (2001) (internal quotation marks omitted)); see also White v. City of Greensboro, 408 F. Supp. 3d 677, 690 n.9 (M.D.N.C. 2019) ("[A]ny motion to dismiss based on sovereign immunity will be considered under Rule 12(b)(2).").

Public official immunity is likewise considered a matter of personal jurisdiction. See McCullers v. Lewis, ____ N.C. App. ____, ____, 828 S.E.2d 524, 531, 535 (2019); Leonard v. Bell, 254 N.C. App. 694, 698, 803 S.E.2d 445, 448 (2017).

The court will therefore consider Defendants' motion to dismiss under Rule 12(b)(2).

### a. Sovereign Immunity for State Official Capacity Claims

Defendants argue that Plaintiffs' claims may only proceed against Individual Defendants in their official capacities "to the extent plaintiff[s] allege[] a waiver of sovereign immunity

and then only to the extent the governmental entity has
purchased liability insurance." (Defs.' Br. (Doc. 7) at 7-8.)

"The doctrine of sovereign immunity bars actions against
public officials sued in their official capacities. Sheriffs and
deputy sheriffs are considered public officials for purposes of
sovereign immunity." Phillips v. Gray, 163 N.C. App. 52, 56-57,
592 S.E.2d 229, 232 (2004) (citation omitted). Sovereign
immunity is "absolute unless the City has consented to [suit] or
otherwise waived its right to immunity."[6] Fullwood v. Barnes, 250
N.C. App. 31, 37, 792 S.E.2d 545, 550 (2016) (quoting
Schlossberg v. Goins, 141 N.C. App. 436, 440, 540 S.E.2d 49, 52
(2000)).

A sheriff may waive governmental immunity in at least two
ways. First, a sheriff "waives governmental immunity when a
county purchases liability insurance which provides coverage to
the sheriff." White v. Cochran, 229 N.C. App. 183, 190, 748
S.E.2d 334, 340 (2013). This waiver "generally extends 'only to

_____

[6] One recent North Carolina Court of Appeals case, however,
notes that "even as public officials acting within the scope of
their official authority, sovereign immunity will not shield
[Individual] Defendants from suit for actions they took which
were malicious or corrupt." McCullers, ____ N.C. App. at ____,
828 S.E.2d at 531. This would seem to prohibit sovereign
immunity from barring a malicious prosecution claim. However,
this observation was made within a broader analysis of public
official immunity and thus most likely should be considered
dicta. The court finds that sovereign immunity bars Plaintiffs'
malicious prosecution and abuse of process claims.

-44-

the extent of the insurance obtained.'" Id. (quoting Evans v. Housing Auth. of Raleigh, 359 N.C. 50, 57, 602 S.E.2d 668, 673 (2004)).

Second, a sheriff waives governmental immunity by purchasing a bond as is required by N.C. Gen. Stat. § 162-8. N.C. Gen. Stat. 58-76-5. "However, the purchase of a bond precludes a sheriff from relying upon the protective embrace of governmental immunity . . . only where the surety is joined as a party to the action, and only to the extent of the amount of the bond." Cochran, 229 N.C. App. at 190, 748 S.E.2d at 339 (internal citations and quotation marks omitted).

Here, Defendants argue that Plaintiffs failed to allege a waiver of governmental immunity; therefore, Plaintiffs' state law claims against Defendants in their official capacities must be dismissed. (Defs.' Br. (Doc. 7) at 8.) Plaintiffs, in their Response, argue that their failure to plead Defendant Johnson's bond surety is not fatal and "with the courts [sic] permission should be allowed to amend the complaint to name the surety in this case." (Pls.' Resp. (Doc. 10) at 12.)

The court will proceed in its analysis based upon the pleadings set forth in the Complaint. Plaintiff's one-sentence request for permission to amend the Complaint is not in the form

necessary to move to amend.[7] See L.R. 15.1 ("[T]he moving party shall attach the proposed amended pleading to the motion.").

The court will proceed in its analysis as though Defendant Johnson has not waived sovereign immunity; the court will, however, allow Plaintiffs to amend their Complaint. Infra Part IV.

Sovereign immunity thus bars all of Plaintiffs' state law claims against Defendants Johnson and Jones in their official capacities.

### b.   Public Official Immunity

Defendants also argue that Plaintiffs' state law claims against all Individual Defendants in their individual capacities are barred by "Public Officers' immunity."[8] (Defs.' Br. (Doc. 7) at 8.)

"The doctrine of public official immunity is a derivative form of governmental immunity." Chastain v. Arndt, 253 N.C. App.

---

[7] Nevertheless, because the court will dismiss this claim under Rule 12(b)(2), the dismissal is without prejudice and Plaintiffs are free to seek leave to amend their Complaint.

[8] North Carolina courts refer to this form of immunity as "public officer immunity" and "public official immunity," interchangeably, though the trend seems to indicate that "public official immunity" is more common now. Compare Baker v. Smith, 224 N.C. App. 423, 430 n.5, 737 S.E.2d 144, 149 n.5 (2012), with McCullers, ___ N.C. App. at ___, 828 S.E.2d at 531 and Leonard v. Bell, 254 N.C. App. 694, 698, 803 S.E.2d 445, 448 (2017). The court will thus refer to this form of immunity as public official immunity.

8, 16, 800 S.E.2d 68, 74 (2017) (quoting Hart v. Brienza, 246 N.C. App. 426, 431, 784 S.E.2d 211, 215 (2016)). "It is settled in this jurisdiction that a public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto." Isenhour v. Hutto, 350 N.C. 601, 609-10, 517 S.E.2d 121, 127 (1999) (quoting Meyer v. Walls, 347 N.C. 97, 112, 489 S.E.2d 880, 888 (1997)). Sheriffs are such public officials. Russ v. Causey, 732 F. Supp. 2d 589, 612 (E.D.N.C. 2010) aff'd, 468 F. App'x 267 (4th Cir. 2012. "A deputy sheriff carrying out his duties is [also] such a public official." Hensley ex rel. North Carolina v. Price, 876 F.3d 573, 587 (4th Cir. 2017) (citing Messick v. Catawba Cty., 110 N.C. App. 707, 431 S.E.2d 489, 496 (1993), abrogated on other grounds by Boyd v. Robeson Cty., 169 N.C. App. 460, 621 S.E.2d 1 (2005)).

Public official immunity also is not available for intentional torts or for corrupt or malicious conduct. See Brown v. Winders, No. 5:11-CV-176-FL, 2011 WL 4828840, at *6 (E.D.N.C. Oct. 11, 2011) (intentional torts); Russ, 732 F. Supp. 2d at 612 (corrupt or malicious conduct). Therefore, "a public official is immune from suit unless the challenged action was (1) outside the scope of official authority, (2) done with malice, or (3) corrupt." Wilcox v. City of Asheville, 222 N.C. App. 285, 288,

730 S.E.2d 226, 230 (2012), disc. rev. denied, 366 N.C. 574, 738
S.E.2d 401-02 (2013).

> A defendant acts with malice when he wantonly does
> that which a man of reasonable intelligence would know
> to be contrary to his duty and which he intends to be
> prejudicial or injurious to another. Thus,
> elementally, a malicious act is an act (1) done
> wantonly, (2) contrary to the actor's duty, and (3)
> intended to be injurious to another.

Id. at 289, 730 S.E.2d at 230 (internal citation omitted).

"Actions that are malicious, corrupt or outside of the
scope of official duties will pierce the cloak of official
immunity . . . ." Hart v. Brienza, 246 N.C. App. 426, 431, 784
S.E.2d 211, 215 (2016), disc. rev. denied, 369 N.C. 69, 793
S.E.2d 223 (2016) (quoting Moore v. Evans, 124 N.C. App. 35, 42,
476 S.E.2d 415, 421 (1996)). If the "cloak of official immunity
has been pierced," a public official is "'then liable for simple
negligence' and 'subject to the standard liabilities of a
tortfeasor.'" Wilcox, 222 N.C. App. at 301, 730 S.E.2d at 232
(quoting Epps. v. Duke Univ., Inc., 122 N.C. App. 198, 205-06,
468 S.E.2d 846, 852 (1996)).

"[W]anton and reckless behavior may be equated with an
intentional act in the context of intentional tort claims."
Hart, 246 N.C. App. at 431, 784 S.E.2d at 216. North Carolina
courts have held that a claim for intentional infliction of
emotional distress is outside the reach of the doctrine. See
McCullers, ____ N.C. App. at ____, 828 S.E.2d at 531 ("Since

public official immunity may only insulate public officials from allegations of mere negligence, only those of Plaintiffs' causes of action sounding in negligence come within the doctrine's reach. Accordingly, we affirm the trial court's denial of Defendants' motion to dismiss Plaintiffs' first cause of action for intentional infliction of emotional distress, which is an intentional tort claim."); Hawkins v. State, 117 N.C. App. 615, 630, 453 S.E.2d 233, 242, disc. rev. improvidently allowed, 342 N.C. 188, 463 S.E.2d 79 (1995).

Accordingly, Individual Defendants are not entitled to public official immunity with respect to Plaintiffs' state claims for intentional infliction of emotional distress and malicious prosecution and abuse of process brought against Individual Defendants in their individual capacities. See White, 408 F. Supp. 3d at 704 n.20 ("Because a malicious prosecution claim requires a showing of malice . . . [the defendant] is not entitled to public official immunity."); Blackburn v. Town of Kernersville, No. 1:14CV560, 2016 WL 756535, at *11 (M.D.N.C. Feb. 25, 2016) ("Blackburn's state law claim of intentional infliction of emotional distress is an intentional tort. Thus, as to this claim, Defendants are not entitled to summary judgment based on public official immunity."). Individual Defendants will receive public official immunity for Plaintiffs' twelfth claim for negligent infliction of emotional distress

because Plaintiffs fail to allege facts tending to "pierce the cloak of official immunity." See infra Part III.C.7.

## 2. Ninth Cause of Action: Intentional Infliction of Emotional Distress

Because sovereign immunity bars this claim against Defendants Johnson and Jones in their official capacities, and Plaintiffs only sue Doe Deputies in their individual capacities, the court will consider this claim as against Individual Defendants solely in their individual capacities.

To state a claim for intentional infliction of emotional distress in North Carolina, a plaintiff must demonstrate: "(1) extreme and outrageous conduct [by the defendant], (2) which is intended to cause and does cause (3) severe emotional distress to another." Turner v. Thomas, 369 N.C. 419, 427, 794 S.E.2d 439, 446 (2016) (quoting Dickens v. Puryear, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981)). "The tort also may be established when a 'defendant's actions indicate a reckless indifference to the likelihood that they will cause severe emotional distress.'" Id. (quoting Dickens, at 452, 276 S.E.2d at 335). "Conduct constituting this cause of action may be found in 'an abuse by the actor of a position . . . which gives him . . . power to affect' the interests of another." Id. (quoting Restatement (Second) of Torts § 46 cmt. e).

The Supreme Court of North Carolina defines "extreme and outrageous conduct" as "that which exceeds all bounds of decency tolerated by society and is regarded as atrocious, and utterly intolerable in a civilized community." Id. (internal citations quotation marks omitted) (collecting cases). That court has noted that it has "set a 'high threshold' to satisfy this element." Id. The behavior must be more than "mere insults, indignities, threats, . . . and . . . plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate or unkind." Hogan v. Forsyth Country Club Co., 79 N.C. App. 483, 493, 340 S.E.2d 116, 123 (1986). Further, "[f]oreseeability of injury, while not an element of the tort, is a factor to consider in assessing the outrageousness of a defendant's conduct." Turner, 369 N.C. at 428-29, 794 S.E.2d at 446.

"Examples of such conduct include firing a weapon into an occupied vehicle, shoving an elderly man, and nonconsensual sexual touching of female workers by male supervisors." Kling v. Harris Teeter Inc., 338 F. Supp. 2d 667, 674 (W.D.N.C. 2002), aff'd, 86 F. App'x 662 (4th Cir. 2004). Further examples include a person "being arrested during his father's funeral while [the plaintiff] was putting the casket into the hearse by plainclothes officers who failed to identify themselves as such,

followed by brutish and bullying behavior by those officers and their superiors to grieving family and friends," Russ, 732 F. Supp. 2d at 606, and blackmailing a plaintiff to cover up corrupt practices, Bradley v. Ramsey, 329 F. Supp. 2d 617, 627 (W.D.N.C. 2004).

Examples of conduct that does not rise to the level of "extreme and outrageous conduct" include arresting a person at 4:00 a.m. in front of a family member, Kling, 338 F. Supp. 2d at 674, causing a district attorney to file a nuisance abatement action against a plaintiff's nightclub, even if the facts may have supported a malicious prosecution claim, Moore v. City of Creedmore, 120 N.C. App. 27, 48, 460 S.E.2d 899, 911 (1995), aff'd in part and rev'd in part on other grounds, 345 N.C. 356, 481 S.E.2d 14 (1997), falsely reporting child abuse to the Department of Social Services, Dobson v. Harris, 134 N.C. App. 573, 578, 521 S.E.2d 710, 715 (1999), rev'd on other grounds, 352 N.C. 77, 530 S.E.2d 829 (2000), and making false statements or lodging false complaints to law enforcement, see Chidnese v. Chidnese, 210 N.C. App. 299, 317, 708 S.E.2d 725, 738-39 (2011) (collecting cases).

Plaintiffs allege facts tending to show Defendants' actions rose to the level of "extreme and outrageous conduct." Plaintiffs allege that Individual Defendants' "intentionally relied on information that was obviously false and unreliable

and gave statements on May 16 2016, May 17th 2017 [sic], May 18th 2016, and on later occasions," and further, that "Defendants at the time, knew said statements were false and that said statements were calculated to cause and did in fact cause irreparable harm to the Plaintiffs." (Compl. (Doc. 1) ¶ 73.) Plaintiffs further allege Individual Defendants' actions "were without any basis in fact and likely to cause [them] to be ostracized and ridiculed by [their] community because of [their] alleged involvement in such a crime." (Id. ¶ 74.)

For example, Plaintiffs allege Defendant Johnson stated, referring to Plaintiffs' charges, that "[t]his has the smell of a human trafficking organization," and that "[w]e're looking into all aspects of human trafficking. Workforce, athletes, sex trafficking, whatever." (Id. ¶ 22.) Plaintiffs also allege Defendant Johnson "publicly stated authorities are searching for three girls who Sheriff Terry Johnson says were last seen with the [Plaintiff Hines] at the center of a human trafficking investigation." (Id. ¶ 27 (alteration in original).)

"Publication of false information which creates a high likelihood of causing plaintiff's 'severe emotional distress, mental anguish, humiliation[,] and ridicule' may constitute extreme and outrageous conduct when its source would be considered 'highly credible' in the eyes of the citizenry." Bryant v. Vill. of Bald Head Island, No. 7:14-CV-223-H, 2015 WL

-53-

4769598, at *3 (E.D.N.C. Aug. 12, 2015); see also Chapman ex
rel. Chapman v. Byrd, 124 N.C. App. 13, 20, 475 S.E.2d 734, 739
(1996). In Bryant, the Village terminated the plaintiff and
provided him with a termination letter which falsely alleged the
plaintiff had violated sexual harassment policies, among other
violations. Bryant, 2015 WL 476598, at *1. The defendants sent
the termination letter to several newspapers and television
stations, which published it the same day. Id. The district
court found that the "Village's publication of false information
without first giving plaintiff a meaningful opportunity to
refute the charges created a high likelihood of causing
plaintiff's severe emotional distress, mental anguish,
humiliation, and ridicule." Id. at *4. The district court held
that the plaintiff had plausibly alleged extreme and outrageous
conduct for his IIED claim and denied the defendants' motion to
dismiss. Id. The same is true here.

Here, Defendants, as county sheriffs and deputy sheriffs,
would be considered "highly credible" in the eyes of the
citizenry on matters relating to crime. Further, allegations
that Plaintiffs were involved in human trafficking, and may be
involved in the disappearance of three young girls, is as
extreme and outrageous as falsely publishing that a person
violated sexual harassment policies. See also Hatfill v. N.Y.
Times, 416 F.3d 320, 336-37 (4th Cir. 2005) (applying Virginia

-54-

law to find that falsely publishing that the plaintiff was responsible for anthrax mailings causing five deaths was sufficient to successfully plead an IIED claim).

The court further finds that Plaintiffs have pled causation and their extreme emotional distress with requisite specificity. Plaintiffs allege they have sought medical help to assist them in coping with the emotional distress, including PTSD, severe depression, and panic disorders, caused by Defendants' statements and actions. (Compl. (Doc. 1) ¶¶ 37-38, 76-77.)

Plaintiffs therefore plausibly state a claim for Intentional Infliction of Emotional Distress and the court will deny Defendants' motion to dismiss Plaintiffs' Ninth Cause of Action as against Individual Defendants in their individual capacities. This denial of the motion to dismiss will be without prejudice to Defendants raising this issue either at trial or summary judgment.[9]

---

[9] The Complaint in this case is conclusory in many respects but is very specific as to the statements of Defendant Johnson. As a result, this court is not willing to make a finding as to this conduct that might establish the law of the case. As law enforcement officers, as opposed to private citizens, and given the sparse factual allegations, there may be a number of contextual facts that could change this analysis.

### 3. **Tenth Cause of Action: Malicious Prosecution & Abuse of Process**

Plaintiffs allege both malicious prosecution and abuse of process under state law in their Tenth Cause of Action. (Compl. (Doc. 1) ¶¶ 79–92.)

"Protection against wrongful litigation is afforded by a cause of action for either abuse of process or malicious prosecution. The legal theories underlying the two actions parallel one another to a substantial degree, and often the facts of a case would support a claim under either theory." Stanback v. Stanback, 297 N.C. 181, 200, 254 S.E.2d 611, 624 (1979), overruled on other grounds by Dickens v. Puryear, 302 N.C. 437, 276 S.E.2d 325 (1981). "The distinction between an action for malicious prosecution and one for abuse of process is that malicious prosecution is based upon malice in causing the process to issue, while abuse of process lies for its improper use after it has been issued." Barnette v. Woody, 242 N.C. 424, 431, 88 S.E.2d 223, 227 (1955).

Because acting with malice is an element of both malicious prosecution and abuse of process, see Turner, 369 N.C. at 425, 794 S.E.2d at 444 (malicious prosecution); Barnette, 242 N.C. at 431, 88 S.E.2d at 227 (abuse of process), public official immunity does not bar these claims as against Defendants Johnson and Jones in their individual capacities. Sovereign immunity

bars this claim against Defendants Johnson and Jones in their official capacities. The court will therefore consider this claim as against Individual Defendants solely in their individual capacities. The court will address each in turn.

### a. Malicious Prosecution

In North Carolina, "[t]o establish malicious prosecution, a plaintiff must show that the defendant (1) initiated or participated in the earlier proceeding, (2) did so maliciously, (3) without probable cause, and (4) the earlier proceeding ended in favor of the plaintiff." Turner, 369 N.C. at 425, 794 S.E.2d at 444.

Plaintiffs do not allege facts sufficient to raise their state-law malicious prosecution claim to the level of plausibility. The court already found that Plaintiffs' allegations that Individual Defendants lacked probable cause fail to rise above "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." See supra Part III.B.1.d. Taking all of Plaintiffs' allegations as true, the court simply cannot find that Plaintiffs state a plausible claim for relief.

### b. Abuse of Process

"Abuse of process consists in the malicious misuse or perversion a civil or criminal writ to accomplish some purpose not warranted or commanded by the writ." Barnette, 242 N.C. at

431, 88 S.E.2d at 227; Moch v. A.M. Pappas & Assocs., LLC, 251 N.C. App. 198, 210, 794 S.E.2d 898, 905 (2016). "The distinction between an action for malicious prosecution and one for abuse of process is that malicious prosecution is based upon malice in causing the process to issue, while abuse of process lies for its improper use after it has been issued." Barnette, 242 N.C. at 431, 88 S.E.2d at 227. "[T]he only essential elements of abuse of process are: [f]irst, the existence of an ulterior purpose and, second, an act in the use of the process not proper in the regular prosecution of the proceeding." Id. at 431, 88 S.E.2d at 227–28.

Plaintiffs allege "Defendants abused process when [they] used the frivolous charges filed, to demean and ridicule Plaintiffs through his statements and press conferences which were only designed to harass Plaintiffs and their families," and that "Defendants knew that the maliciously obtained documents had no truth to it and had not been thoroughly investigated, but continued to use the ill-gotten information to threaten harass and intimidate Plaintiffs." (Compl. (Doc. 1) ¶¶ 88–89.) The court finds these are conclusory statements that do not advance Plaintiffs' claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

### c.  Tenth Cause of Action Conclusion

Because Plaintiffs do not allege sufficient facts to establish either a state-law malicious prosecution or abuse of process claim, the court will dismiss Plaintiffs' Tenth Cause of Action under Rule 12(b)(6).

### 4.  Eleventh Cause of Action: State Law Defamation Claim

Plaintiffs' claim for slander is barred by the applicable statute of limitations. N.C. Gen. Stat. § 1-54(3) provides that actions for "libel and slander" have a statute of limitations of one year. "Ordinarily, a defense based on the statute of limitations must be raised by the defendant through an affirmative defense, and the burden of establishing the affirmative defense rests on the defendant." Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (citing Fed. R. Civ. P. 8(c)). A motion to dismiss under Rule 12(b)(6):

> generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred. But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6). This principle only applies, however, if all facts necessary to the affirmative defense "clearly appear[] on the face of the complaint."

Id.

Here, "all facts necessary to the affirmative defense clearly appear[] on the face of the complaint." Id. (internal

quotation marks omitted). Plaintiffs allege that Defendant Johnson's statements were made between May 16, 2016, May 17, 2016, and May 18, 2016. (Compl. (Doc. 1) ¶ 96.) Plaintiffs filed the Complaint on May 16, 2019, (see Compl. (Doc. 1)), exactly three years after the alleged statements were made. Because the causes of action clearly accrued more than one year prior to the filing of the action, Plaintiffs' Eleventh Cause of Action for slander is time-barred, and dismissal under Rule 12(b)(6) is appropriate.

      **5.**    **Twelfth Cause of Action: Negligent Infliction of Emotional Distress**

Public official immunity bars this claim against Individual Defendants in their individual capacities. See McCullers, ____ N.C. App. at ____, 828 S.E.2d at 532 ("[P]ublic officials may not be held individually liable for mere negligence in actions taken without malice or corruption and within the scope of their duties."). Plaintiffs have put forth no evidence tending to show that Defendants' actions were "malicious, corrupt or outside of the scope of official duties [which would] pierce the cloak of official immunity[.]" Hart, 246 N.C. App. at 431, 784 S.E.2d at 215. Public official immunity thus bars this cause of action. Sovereign immunity also bars this claim against Individual Defendants in their official capacities. The court will therefore dismiss this claim under Rule 12(b)(2).

IV.  CONCLUSION

For the reasons set forth above, the court finds that Defendants' motion will be denied with respect to Plaintiffs' Ninth Cause of Action and will be granted for the remaining causes of action.[10]

The court finds Plaintiffs' Causes of Action One through Eight, Ten, and Eleven fail to allege a plausible claim.

The court further finds Plaintiffs' Causes of Action Nine, Ten, and Twelve against Individual Defendants Johnson and Jones in their official capacity are barred by sovereign immunity, and that Plaintiffs' Twelfth Cause of Action against Individual Defendants in their individual capacities is barred by public official immunity.

**IT IS THEREFORE ORDERED** that Defendants' motion to dismiss, (Doc. 6), is **GRANTED IN PART and DENIED IN PART**. Defendants' motion to dismiss is **DENIED** as to Plaintiffs' Ninth Cause of Action against Individual Defendants in their individual capacities. Defendants' motion to dismiss is **GRANTED** as to claims Nine, Ten, and Twelve against Individual Defendants in

---

[10] The court also feels the need to note that the briefing done by both sides on this motion to dismiss was suboptimal. The court finds that the words of Judge Dixon ring true here: "I cannot help but observe that the court's work in adjudicating this motion to dismiss was needlessly prolonged . . . . The briefs contain scant legal analysis, with little authority presented to support each side's arguments." Efird v. Riley, 342 F. Supp. 2d 413, 430 (M.D.N.C. 2004).

their official capacities, and those claims are **DISMISSED WITHOUT PREJUDICE** under Rule 12(b)(2). Defendants' motion to dismiss is **GRANTED** as to claims One through Eight against Defendants in all capacities, and claims Ten and Twelve as against Individual Defendants in their individual capacities, and those claims are **DISMISSED WITH PREJUDICE** under Rule 12(b)(6).

This the 30th day of March, 2020.

_____
United States District Judge